SANDRA R. BROWN
Acting United States Attorney
DOROTHY A. SCHOUTEN
Assistant United States Attorney
Chief, Civil Division
ROBYN-MARIE LYON MONTELEONE
Assistant United States Attorney
Chief, General Civil Section
RICHARD M. PARK (SBN 236173)
Assistant United States Attorney
    Room 7516, Federal Building
    300 North Los Angeles Street
    Los Angeles, California 90012
    Tel: (213) 894-3275
    Fax: (213) 894-7819
    Email: richard.park@usdoj.gov

Attorneys for Defendant
United States of America

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZEDDRICK F. WHITE,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Case No. CV 16-06348 R (KSx)<br><br>**POST-TRIAL FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Trial: August 8, 2017 at 10:00 a.m.<br><br>Location: Roybal Federal Building and U.S. Courthouse<br>255 East Temple Street<br>Courtroom 880<br>Los Angeles, CA 90012<br><br>Honorable Manuel L. Real<br>United States District Judge |

The Court conducted the trial of the above-captioned action on August 8, 2017; heard the entirety of Plaintiff's evidence; admitted into evidence Defendant's trial exhibits 1-26; heard Defendant's motion for judgment on partial findings pursuant to Rule 52(c) of the Federal Rules of Civil Procedure; Plaintiff's opposition thereto; and granted such motion. As instructed by the Court, Defendant United States hereby submits the following Proposed Post-Trial Findings of Fact and Conclusions of Law. A proposed Judgment has been submitted under separate cover.

I. **FINDINGS OF FACT**

1. On January 20, 2015, Plaintiff visited the West Los Angeles facility of the Veterans Affairs Greater Los Angeles Health Care System ("West LA VA") to receive treatment for urinary frequency. Plaintiff saw a VA primary care physician, who conducted a clinical examination and routine laboratory testing.

2. Later that same day, Plaintiff's primary care physician informed him about his abnormal laboratory results and requested that Plaintiff visit the Emergency Department at the West LA VA for follow up testing and treatment.

3. Plaintiff's initial laboratory results revealed that he had high levels of creatinine (measurements of toxins in the blood), which indicates poor kidney function.

4. At the Emergency Department, Plaintiff underwent additional clinical evaluation, laboratory testing, and a kidney ultrasound to determine the etiology of his kidney problems. This workup indicated that Plaintiff had Vitamin D toxicity (extremely high levels of Vitamin D in blood) and hypercalcemia (excessive amount of calcium in blood). Plaintiff was diagnosed with acute renal failure and acute kidney injury. He was admitted to the West LA VA hospital as an inpatient.

5. Plaintiff revealed to VA healthcare providers that he consumed a Vitamin D supplement, multivitamin, workout supplement, and various herbal supplements in the months prior to the Emergency Department visit.

6. Taking excessive amounts of supplements containing Vitamin D can raise calcium levels and cause hypercalcemia. When hypercalcemia is present, a person's kidneys must work harder to filter the blood, which can cause excessive thirst and frequent urination. Hypercalcemia can damage the kidneys and limit their ability to cleanse blood and eliminate fluid.

7. Physicians from the Nephrology Department of West LA VA consulted with the VA medical staff regarding Plaintiff's renal issues.

8. During his hospital admission, Plaintiff received an intravenous saline solution and calcitonin medication to address his hypercalcemia.

9. On January 21, 2015, Plaintiff was also subject to a full renal workup to determine the cause of his acute kidney injury.

10. As part of the full renal workup, Plaintiff underwent a chest x-ray and was tested for a number of conditions that are known to have a damaging effect on kidney function, including Hepatitis B, Hepatitis C, Syphilis, and HIV.

11. Patients with acute kidney injuries are routinely tested for HIV because the virus itself can damage the kidneys.

12. A VA healthcare provider explained the nature of the full renal workup and obtained Plaintiff's consent to complete the workup.

13. On January 22, 2015, VA healthcare providers conducted a renal biopsy to obtain more information regarding Plaintiff's acute kidney injury. Plaintiff consented to the renal biopsy.

14. The renal biopsy did not show evidence of chronic kidney disease.

15. Following the biopsy, VA healthcare providers continued to provide intravenous fluids to improve Plaintiff's creatinine levels and medication for his hypercalcemia.

16. On January 24, 2015, Plaintiff was informed by VA healthcare providers that he tested HIV positive.

1  17. The same day, following the disclosure of Plaintiff's HIV status, Plaintiff left the hospital against medical advice.

18. Although VA healthcare providers strongly encouraged him to stay in the hospital, knowing that Plaintiff was determined to leave, they advised him to drink ample amounts of fluid, eat a low calcium diet, and take the prescription steroid Prednisone for his hypercalcemia.

19. Before leaving the hospital Mr. White was "informed of the risk involved and released the attending physician and the hospital from all responsibility and any ill effect which may result [*sic*] from their action."

20. Upon leaving the hospital, Mr. White "was not angry" and "felt he had been provided overall good care, but had many personal things going on that he could not explain."

21. Prior to his departure from the hospital, Plaintiff's creatinine levels were substantially lower.

22. VA healthcare providers instructed Plaintiff to follow-up with the VA Nephrology Department and the VA HIV clinic at the West LA VA.

23. At all times during his hospital admission from January 20 – 24, 2015, Plaintiff was appropriately treated by VA healthcare providers for his acute kidney injury.

24. Between January 26 to March 5, 2015, VA healthcare providers called Plaintiff and left voicemail messages asking him to schedule an appointment.

25. On January 30, 2015, Plaintiff's primary care physician sent him a letter reminding him of a nephrology appointment on February 4, 2015, informing him that she made a request to an infectious diseases HIV specialist for a consultation, and asking him to make a primary care appointment.

26. After leaving against medical advice on January 24, 2015, Plaintiff never returned to the West LA VA for any medical treatment at all, including any follow up for his acute kidney injury or for his HIV condition.

27. Each VA healthcare provider was acting within the course and scope of his or her employment when treating Plaintiff.

28. On or about March 4, 2015, Plaintiff filed an administrative tort claim (Standard Form-95) against the Department of Veterans Affairs in the amount of Fifty-Thousand Dollars ($50,000) claiming he was tested for HIV without his consent and for misdiagnosing kidney failure.

29. Defendant's retained expert in internal medicine and nephrology, Dr. Stuart Friedman, opined that VA healthcare providers at all times met the applicable standard of care and provided appropriate treatment. He also opined that VA healthcare providers did not breach the standard of care in diagnosing and treating Plaintiff for kidney injury. See Trial Ex. 26.

30. The Court finds that Dr. Friedman is appropriately credentialed and qualified to provide expert medical opinion. The Court further finds that his expert opinions as set forth in his report are credible.

31. Plaintiff presented no expert witness testimony in support of his claims.

32. The Court further finds that Plaintiff's testimony was inadequate to set forth a prima facie case of medical negligence or to establish any of the claims made in his complaint.

33. Any finding of fact deemed to be a conclusion of law is hereby incorporated into Conclusions of Law.

## II. CONCLUSIONS OF LAW

1. In an action brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq., the law of the place where the allegedly negligent act occurred governs the substantive law applied. See 28 U.S.C. §§ 1346(b).

2. To have a cognizable claim under the FTCA, the claim must arise from the negligent or wrongful act of a government employee acting within the scope of his or her employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act

or omission occurred." 28 U.S.C. § 1346(b); Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 936, 97 L.Ed. 1427 (1953).

3. California law applies to the instant suit because the acts or omissions at issue in this suit occurred at the West LA VA in Los Angeles, California.

4. Under the FTCA, the United States is liable for money damages in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages. 28 U.S.C. § 2674.

5. Under the FTCA, Plaintiff's damages, if any, are limited to the amount claimed administratively. See 28 U.S.C. §2675(b).

6. To prove medical malpractice under California law, Plaintiff must establish: (1) the duty of VA healthcare providers to use such skill, prudence, and diligence as other members of their profession commonly possess and exercise; (2) that VA healthcare providers breached that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the VA healthcare providers' negligence. See, e.g., Hanson v. Grode, 76 Cal. App. 4th 601, 606 (1999); Gami v. Mullikin Med. Ctr., 18 Cal. App. 4th 870, 877 (1993) (reciting elements of medical negligence claim).

7. As a general rule, the testimony of an expert witness is required in every professional negligence case to establish (i) the applicable standard of care, (ii) whether that standard was met or breached by defendant, and (iii) whether any breach of the standard of care by defendant caused the plaintiff's damages. See Scott v. Raybrer, 185 Cal. App. 4th 1535, 1542 (Cal. App. 2d Dist. 2010) (citing Flowers v. Torrance Memorial Hospital Medical Center, 8 Cal. 4th 992, 1001 (1994).

8. "The standard of care in a medical malpractice case requires that medical service providers exercise . . . that degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under similar circumstances." Barris v. County of Los Angeles, 20 Cal. 4th 101, 108 n.1 (1999).

9. Thus, a physician breaches the standard of care only if the physician's action is "[a] deviation from the standard of care that his peers consider appropriate in the situation." Burgess v. Superior Ct., 2 Cal. 4th 1064, 1081 (1992).

10. The burden of proof with respect to all elements of his claims rests with Plaintiff who must demonstrate to a reasonable degree of medical probability that the VA healthcare providers breached the applicable standard of care and thereby caused injury based upon competent expert testimony. See Vasquez v. Residential Investments, Inc., 118 Cal. App. 4th 269, 288 (2004); Bromme v. Pavitt, 5 Cal. App. 4th 1487, 1489 (1992) (citing Jones v. Ortho Pharmaceutical Corp., 163 Cal. App. 3d 396, 402-403 (1985)).

11. "A tort is a legal cause of injury only when it is a substantial factor in producing the injury." Soule v. GM Corp., (1994) 8 Cal. 4th 548, 572.

12. Under California Civil Jury Instruction ("CACI") 430: A substantial factor in causing harm is a factor that a reasonable person would consider to have contributed to the harm. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm. [Conduct is not a substantial factor in causing harm if the same harm would have occurred without that conduct.] CACI 430 (2010).

13. Plaintiff did not meet his burden of proof on any element of any claim presented in his complaint.

14. West LA VA staff provided appropriate medical care for Plaintiff's acute kidney injury and ordered appropriate testing to determine the cause of such injury. Their conduct met the applicable standard of care at all times relevant to this case.

15. Plaintiff consented to the care and treatment given to him at the West LA VA.

16. Dr. Friedman, Defendant's expert nephrologist, provided credible testimony that VA healthcare providers acted within the standard of care in diagnosing or treating Plaintiff for his kidney injury.

17. Plaintiff did not present any opinion by a treating physician or expert witness that any VA healthcare provider breached the standard of care in diagnosing or treating Plaintiff for his kidney injury.

18. Plaintiff did not present any opinion by a treating physician or expert witness that Plaintiff acquired HIV during his VA hospital admission.

19. To a reasonable degree of medical probability, Plaintiff could not have contracted HIV during his inpatient care at the West LA VA.

20. No act or omission by any VA healthcare provider breached the applicable standard of care. No act or omission by any VA healthcare provider was the legal cause of any injury to Plaintiff.

21. The United States did not breach any duty owed to Plaintiff.

22. The United States did not cause any of the injuries alleged by Plaintiff.

23. Under Rule 52(c) of the Federal Rules of Civil Procedure, Defendant is entitled to judgment on partial findings because Plaintiff was fully heard during a nonjury trial and did not establish that VA healthcare providers breached any duty or caused any of the injuries alleged by Plaintiff.

24. Any conclusion of law deemed to be a finding of fact is hereby incorporated into Findings of Fact.

Dated: August 14, 2017.

_____
HONORABLE MANUEL L. REAL
UNITED STATES DISTRICT COURT JUDGE